FIVE STAR ENTERPRISES, INC., D/B/A LIGHTHOUSE MARINA, BY WESLEY B. GRANT, TRUSTEE IN BANKRUPTCY v. JOEL W. RUSSELL, MALCOLM G. KELLY, ALFRED H. RUSSELL, ODELL CASTEEN, DON SWISHER, AND JOHN GLENN

No. 7719SC3

(Filed 19 October 1977)

**Corporations § 30— bankrupt corporation—funds allegedly wrongfully diverted— summary judgment proper**

In an action by a trustee in bankruptcy to recover funds allegedly wrongfully diverted from the bankrupt corporation, the trial court properly granted summary judgment for defendant where the pleadings and affidavits tended to show that defendant did not know of the existence of the corporation but dealt personally with one of its officers; defendant purchased a boat from the officer and subsequently paid the balance owed on the boat by writing a check to the officer individually; and the officer took the check and used the funds to repay a personal loan which he had taken out in order to pay debts owed by the corporation.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 27 October 1976 in Superior Court, CABARRUS County. Heard in the Court of Appeals 27 September 1977.

Plaintiff, trustee in bankruptcy for Five Star Enterprises, Inc., d/b/a Lighthouse Marina ("Five Star"), filed a complaint alleging that defendant John Glenn, by paying to Joel Russell personally $2,000 which defendant owed to Five Star, knowingly participated with Five Star officers Joel Russell and Malcolm Kelly in their scheme to divert funds from Five Star to their own personal use. Plaintiff contends in his complaint that defendant made said payment to Russell with full knowledge of Russell's scheme of wrongdoing. Plaintiff seeks recovery of the $2,000 allegedly diverted from Five Star.

Defendant answered and admitted paying to Joel Russell personally the $2,000 balance owing on a boat purchased from Russell at Five Star but denied any knowledge of Russell's scheme to divert the funds from Five Star and also denied that Russell did in fact divert the funds from Five Star. It is defendant's contention that Russell used the funds to repay a personal loan which he had taken out in order to pay debts owing by Five Star. Both plaintiff and defendant filed motions for summary judgment. The court granted summary judgment in favor of defendant and plaintiff appealed.

*Wesley B. Grant, P.A., for the plaintiff.*

*George C. Mountcastle, for the defendant.*

MARTIN, Judge.

Plaintiff contends that the court erred in granting summary judgment in defendant's favor. He argues that a genuine issue of material fact exists as to whether, at the time defendant made the $2,000 payment to Russell, he had knowledge of Five Star and its financial condition and of Russell's intention to apply the check to his own personal obligation.

Defendant's affidavit, in support of his motion for summary judgment, sets forth the following facts: that he had known Russell and Kelly since 1972 when he purchased a home from them; that during the construction of the home, all bills came from Russell and all checks were made out to Russell or Russell Builders; that defendant understood Russell and Kelly to be 50-50 partners in the business; that in 1974 Russell informed defendant that he and Kelly had opened a marina and recommended a boat that defendant might like to purchase; that defendant did purchase the boat by trading in his old boat leaving a balance owing of $2,000; that defendant asked Russell how to make the check out for the balance and was told to make it out to Russell personally because Russell intended to take it to the bank to pay on a note due for boats, defendant's boat being

one of them; that defendant therefore wrote the check on 16 September 1974 and made it payable to Russell, noting on the check that it was in payment for the boat purchased plus all gas to date; that defendant had no reason to inquire into Russell's request that the check be made to him personally since in his prior dealings with Russell, all checks had been so written and since defendant assumed that Russell and Kelly were partners in the marina business; that defendant had never heard of Five Star at the time because the marina was doing business as the "Lighthouse Marina"; and that had Russell asked defendant to make the check payable to Five Star, defendant would have been suspicious and inquired as to the reasons for doing so. Defendant also filed an affidavit by the president of First National Bank of Albemarle stating that in September 1974 Russell attempted to take out a loan on behalf of Five Star to pay off a debt owing by Five Star to Westinghouse Credit Corporation, but the bank refused to make the loan because of Five Star's financial problems; that Russell then asked for a personal loan in an amount sufficient to pay the debt, and the bank agreed; that the loan funds were used by Russell to issue a cashier's check to Westinghouse; that on 17 September 1974 Russell deposited a check from defendant in the amount of $2,019.18 in his own account and immediately applied the full amount to the personal loan which he had taken out a few days before; and that in the bank's opinion, Russell did not divert the funds from Five Star but used them to pay on the note which was given in order to pay Five Star's debt to Westinghouse.

In response to defendant's motion for summary judgment, the plaintiff trustee filed an affidavit quoting from an examination of Russell in March 1976 during which Russell stated that

"[W]hat happened Mac Kelly borrowed money from First Citizens Bank and he used boats and motors and trailers as collateral. Every three months a percentage of it had to be paid off. . . . Four thousand four hundred dollars came due. The company didn't have the money . . . so I went to the bank at First National Bank and borrowed the money to pay off First Citizens Bank . . . I told Kelly when I got some money I was going to pay that note off. So Mr. John Glenn he and I are real good friends. I built him a home. I told him the situation. I said, 'Make the check out to me; I'll take it to the bank and apply it to the note.' So he did so."

We must now determine whether, in view of the supporting and opposing affidavits, the trial judge's entry of summary judgment in favor of defendant was proper.

We note at the outset that the burden is upon the moving party to establish the lack of a triable issue of fact. *Brevard v. Barkley,* 12 N.C. App. 665, 184 S.E. 2d 370 (1971). Defendant's answer and affidavits disclose in detail the extent of defendant's dealings with Joel Russell and Malcolm Kelly. The facts therein convincingly show that defendant did not knowingly participate in a scheme to divert funds from Five Star. Defendant had dealt with Russell and Kelly in prior transactions under the assumption that they were partners and in fact had never heard of Five Star; and having purchased a boat from Russell, defendant had every reason to believe that his check to Russell personally for the balance owed would in fact be used therefor. These facts would require a directed verdict in defendant's favor if offered at trial. Thus, defendant successfully carried his burden and was entitled to summary judgment unless plaintiff's opposing affidavit demonstrates that there is a genuine issue as to these facts.

When a motion for summary judgment is made and properly supported, as in the instant case, the adverse party may not rest upon the mere allegations or denials of his pleading, but must, by affidavit or otherwise, set forth *specific facts* showing that there is a genuine issue for trial. G.S. 1A-1, Rule 56(e); *see Patterson v. Reid,* 10 N.C. App. 22, 178 S.E. 2d 1 (1970). The plaintiff contends that the material fact about which there is a genuine issue is the notice or knowledge which defendant Glenn had as to the existence of Five Star and the intended application by Russell of Glenn's money to pay his (Russell's) personal obligation. He argues that this issue is created by the conflicting statments in defendant's answer and affidavit—the answer alleging that Russell informed defendant of Five Star's existence and of his intent to pay off a personal loan with defendant's check, and the affidavit stating that defendant had no knowledge of Five Star prior to this lawsuit—and plaintiff's affidavit revealing Russell's statement that he had told defendant the situation about the company's financial condition prior to accepting defendant's check.

Considering the facts stated in plaintiff's affidavit in the light most favorable to plaintiff, we are unable to find that they create a genuine issue for trial. Russell's statement (in plaintiff's affidavit) that "I told him the situation . . ." does not in any way indicate that Russell informed defendant Glenn of Five Star's existence, its finan-

cial condition or the personal nature of the note to which Russell intended to apply the $2,000. Moreover, defendant's answer contains no acknowledgment by defendant that he was informed by Russell of Five Star's existence. In short, plaintiff has failed to produce specific facts sufficient to rebut defendant's showing and create a genuine issue for trial.

Viewing the record before us, we find that defendant was informed, not of an intent to divert funds from Five Star, but of an intent to apply defendant's check to the benefit of the marina, which Russell apparently did. Not only did plaintiff fail to create an issue as to defendant's knowledge of the alleged scheme, but he also failed to create an issue as to actual diversion of the $2,000 check.

Accordingly, we hold that the trial judge's order allowing defendant's motion for summary judgment was proper.

Affirmed.

Judges BRITT and HEDRICK concur.