STATE OF NORTH CAROLINA, ON RELATION OF R. STUART ALBRIGHT, DISTRICT ATTORNEY OF THE 18TH PROSECUTORIAL DISTRICT, PLAINTIFF v. ROBERT C. ARELLANO, CHA U. ARELLANO, ROCHA ENTERPRISES, INC. D/B/A ROSE SPA, AND OTHER UNKNOWN PERSONS, DEFENDANTS

No. COA03-258

(Filed 3 August 2004)

1. **Constitutional Law— Double Jeopardy—public nuisance action following prostitution conviction**

   The Double Jeopardy Clause was not violated by an action by a district attorney seeking the illegal profits from a public nuisance owned by defendants, who had been convicted of maintaining a place for prostitution. The North Carolina statutes on abatement of nuisances, examined under *Hudson v. United States*, 522 U.S. 93 (1997), do not reveal clear proof of legislative intent to impose a criminal penalty.

2. **Nuisance; Constitutional Law— prostitution—summary judgment—right to jury trial**

   Summary judgment for plaintiff was appropriate on an action for injunctive relief, abatement, and forfeiture following defendants' conviction for maintaining a place for prostitution. The State's evidence was sufficient to prove that defendants engaged in a nuisance and that proceeds from the activity should be forfeited, while defendants provided no evidence to refute plaintiff's account of their activity. This does not deprive defendants of their right to a jury trial, which accrues only when there is a genuine issue of fact.

### 3. Nuisance— prostitution—damages—summary judgment

Summary judgment should not have been awarded to plaintiff on damages in a nuisance action by a district attorney following defendants'. conviction for maintaining a place for prostitution. While the gross income from Rose Spa could be calculated from tax records, the amount derived from unlawful activity is disputed. N.C.G.S. § 19-6.

Appeal by defendants from judgments entered 12 August 2002 by Judge Lindsay R. Davis, Jr., and 12 November 2002 by Judge Richard L. Doughton in Guilford County Superior Court. Heard in the Court of Appeals 2 December 2003.

*R. Stuart Albright, District Attorney, 18th Prosecutorial District, and Forman Rossabi Black P.A., by Amiel J. Rossabi and William F. Patterson, for the State.*

*A. Wayne Harrison for defendants.*

TIMMONS-GOODSON, Judge.

This case involves a complaint by Guilford County District Attorney R. Stuart Albright ("plaintiff") to claim the illegal profits from a public nuisance owned and operated by Robert C. Arellano and Cha U. Arellano ("defendants"). Defendants appeal two orders of summary judgment entered against them pursuant to N.C. Gen. Stat. § 19. For the reasons stated herein, we affirm in part and reverse in part the trial court's judgment.

The pertinent factual and procedural history of the case is as follows: Defendants owned and operated Rose Spa, a massage business in Greensboro, North Carolina from 1991 to 2001. The Greensboro Police Department Vice/Narcotics Division suspected Rose Spa of housing a prostitution ring. Following an undercover investigation, the Greensboro Police Department obtained evidence of prostitution.

Defendants were arrested and charged with the misdemeanor criminal offenses of maintaining a place for purposes of prostitution, permitting the use of a place for prostitution, and aiding and abetting prostitution pursuant to N.C. Gen. Stat. § 14-204(1), (2) and (7). Defendants were convicted in district court on 14 February 2002 of all charges. The trial court sentenced defendants to forty-five days in jail with a suspended sentence of five years, and placed defendants on

unsupervised probation on the conditions that they not be convicted of a similar offense, and that they pay a $500 fine.

Concurrent with the criminal prosecution, plaintiff filed the underlying civil action in 2001 pursuant to N.C. Gen. Stat. § 19 to permanently enjoin defendants from operating a public nuisance, and to seek "an order of forfeiture of all personal property, monies, contents and other considerations received or used in conducting and maintaining said nuisance." Defendants filed a motion for summary judgment on 15 February 2002, one day after their criminal convictions, asserting that "this proceeding is barred by the protection against double jeopardy." Defendants presented no evidence in support of their motion. Plaintiff filed a cross motion for summary judgment on 22 April 2002 accompanied by affidavits from three witnesses. The trial court heard oral arguments on 22 July 2002 and granted plaintiff's motion for summary judgment on 12 August 2002, granting plaintiff injunctive relief, an order of abatement, and an order of forfeiture of personal property. The trial court decreed in its order, *inter alia*, that the matter would "proceed to trial solely on the issue of damages."

After an accounting of the income earned from Rose Spa from 1991 through 2001, plaintiff filed a motion for summary judgment on damages on 1 November 2002 claiming that all of defendants' income should be forfeited. Defendants filed affidavits on 29 October 2002 stating that they did not have the documentation necessary to perform an accounting. Defendants filed a response to the motion for summary judgment on 31 October 2002, asserting that "the amount of damages, if any, is a subject for resolution of contested factual and legal issues." The trial court granted plaintiff's motion for summary judgment in November 2002, and ordered defendants to pay $1,633,137.13 in damages plus court costs and attorneys fees. It is from these two orders of summary judgment that defendants appeal.

---

The issues presented on appeal are whether (I) the civil action against defendants invokes the Double Jeopardy Clause; (II) the trial court erred by granting summary judgment on the issue of forfeiture; (III) the trial court erred by awarding damages in the amount of $1,633,137.13; and (IV) the damages award violates the excessive fines clauses of the North Carolina and United States constitutions.

[1] Defendants first argue that the civil action against defendants invokes the Double Jeopardy Clause because defendants were convicted of criminal charges arising from the same conduct. We disagree.

The Double Jeopardy Clause prohibits "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Montana Dept. of Rev. v. Kurth Ranch*, 511 U.S. 767, 769, n.1 (1994). "The Law of the Land Clause incorporates similar protections under the North Carolina Constitution." *State v. Oliver*, 343 N.C. 202, 205, 470 S.E.2d 16, 18 (1996), citing N.C. CONST. art. I, § 19.

In *Hudson v. United States*, 522 U.S. 93 (1997), the United States Supreme Court modified the standard for Double Jeopardy analysis. The *Hudson* Court noted that "the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment." 522 U.S. at 98-99 (citations omitted). Instead, "[t]he [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense." 522 U.S. at 99 (citations omitted). The *Hudson* Court then advanced a two-part inquiry for determining whether a statutory scheme imposes punishment for double jeopardy purposes:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," as to "transform what was clearly intended as a civil remedy into a criminal penalty."

522 U.S. at 99 (citations omitted). The *Hudson* Court further established the following seven factors to be considered in assessing whether the punitive nature of the statute transforms the civil remedy into a criminal penalty:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the

behavior to which it applies is already a crime; (6) whether any alternative purpose to which it may rationally be connected is assignable to it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

522 U.S. at 99-100 (emphasis omitted). The *Hudson* Court emphasized that no one factor is controlling, 522 U.S. at 101, and cautioned that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." 552 U.S. at 100 (citations omitted).

Pursuant to the two-part inquiry articulated in *Hudson*, we analyze the case *sub judice* by first examining the purpose behind North Carolina statutes on abatement of nuisances, which provide in pertinent part the following:

Wherever a nuisance is kept, maintained, or exists, as defined in this Article, the . . . district attorney . . . may maintain a civil action in the name of the State of North Carolina to abate a nuisance under this Chapter, perpetually to enjoin all persons from maintaining the same, and to enjoin the use of any structure or thing adjudged to be a nuisance under this Chapter . . . .

N.C. Gen. Stat. § 19-2.1 (2003).

If the existence of a nuisance is admitted or established in an action as provided for in this Chapter an order of abatement shall be entered as a part of the judgment in the case, which judgment and order shall perpetually enjoin the defendant and any other person from further maintaining the nuisance at the place complained of . . . . Such order may also require the effectual closing of the place against its use thereafter for the purpose of conducting any such nuisance.

N.C. Gen. Stat. § 19-5 (2003).

All personal property, including money and other considerations, declared to be a nuisance under . . . other sections of this Article, are subject to forfeiture to the local government and are recoverable as damages in the county wherein such matter is sold, exhibited or otherwise used. . . . An amount equal to the sum of all moneys estimated to have been taken in as gross income from such unlawful commercial activity shall be forfeited to the general funds of the city and county governments wherein such activity took place . . . as a forfeiture of the fruits of an

unlawful enterprise, and as partial restitution for damages done to the public welfare.

N.C. Gen. Stat. § 19-6 (2003).

The fact that § 19-2.1 expressly labels a lawsuit brought in this manner as a civil action indicates a legislative intent to establish a civil remedy for nuisance issues. Having made this determination, we next apply the seven-factor test discussed *supra* to determine whether the effect of the statute is to impose a criminal punishment.

The first factor requires a review of whether the statute imposes an "affirmative disability or restraint," i.e., whether it imposes a sanction "approaching the infamous punishment of imprisonment." *State v. Beckham*, 148 N.C. App. 282, 285, 558 S.E.2d 255, 257 (2002), *citing Hudson*, 522 U.S. at 104 (citations omitted). Defendants argue that this question must be answered in the affirmative because the statute allows for permanent injunctive relief, which can result in imprisonment for contempt if such an injunction is violated. We disagree.

The realm of this statute does not provide for a punishment of imprisonment. It is only the ancillary possibility of a contempt violation which may impose such a punishment. This connection is too tenuous to invoke the Double Jeopardy Clause. As the Court reasoned in *Hudson*, if double jeopardy implications prevented contempt rulings, then all civil remedies would give rise to double jeopardy. *See Hudson*, 522 U.S. at 102. Our civil courts could not use contempt rulings to reinforce injunctive relief because of double jeopardy implications.

The second factor asks whether the civil remedy in question has historically been regarded as a punishment. Defendants argue that the answer to this question is "yes" because "prostitution has been subjected to criminal punishment since the dawn of civilization."

Defendants' response indicates that they misinterpret the nature of the question asked. The appropriate inquiry is not whether the nuisance activity has been historically punished, but rather if the civil remedy imposed by the statute has been historically viewed by the courts as punishment. We hold that the civil remedy imposed by General Statute § 19.6 has not been historically viewed by the courts as punishment.

Historically, criminal "punishment has taken the forms of incarceration and incapacitation." *State v. Evans*, 145 N.C. App. 324, 333,

550 S.E.2d 853, 859 (2001). The statute in question does not offer a remedy of incarceration or incapacitation. It only allows for injunctive relief and monetary damages which "have historically not been viewed as criminal punishment." *Beckham*, 148 N.C. App. at 285, 558 S.E.2d at 257, *citing Helvering v. Mitchell*, 303 U.S. 391 (1938).

The third factor asks whether the civil remedy comes into play only on a finding of scienter. Defendants argue that this question must be answered affirmatively because General Statutes § 19-6 provides that money damages are "recoverable from such persons who, under G.S. 19-2.4, have knowledge of the nuisance at the time such moneys are received by them." We disagree.

The sanction does not come into play upon a finding of scienter. The paragraph that allows for forfeiture permits such a penalty "upon judgment against the defendant or defendants in legal proceedings" without regard to defendants' state of mind. Thus, defendants' intent is not at issue in this analysis. *See Hudson*, 522 U.S. at 105.

The fourth factor asks whether the sanction promotes the "traditional aims of punishment—retribution and deterrence." *Beckham*, 148 N.C. App. at 286, 558 S.E.2d at 258. Defendant argues that "surely a statute that can result in the complete loss [of] all assets of ones [sic] business, real and personal, carries a deterrent impact, and voices societal retribution." We find this argument unpersuasive.

We "recognize that the imposition of both money penalties and [other] sanctions will deter others from emulating [defendants'] conduct," *Hudson*, 522 U.S. at 105; however, "the mere presence of a [deterrent quality] is insufficient to render a sanction criminal [because] deterrence may serve civil as well as criminal goals." *Beckham*, 148 N.C. App. at 286, 558 S.E.2d at 258, *citing Hudson*, 522 U.S. at 105 (citations omitted).

We also recognize that civil forfeiture has a retributive effect. In fact, § 19-6 plainly states that "[a]n amount equal to the sum of all moneys estimated to have been taken in as gross income from such unlawful commercial activity shall be [treated] . . . as a forfeiture of the fruits of an unlawful enterprise, and as partial restitution for damages done to the public welfare." N.C. Gen. Stat. § 19-6 (2003). However, as we have previously noted,

> [c]ivil forfeitures in contrast to civil penalties, are designed to do more than simply compensate the Government [for the cost of investigating and prosecuting this case]. Forfeitures serve a vari-

ety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct. They are not, however, intended as punishment, and therefore do not constitute penal measures in violation of double jeopardy prohibitions.

*Belk v. Cheshire*, 159 N.C. App. 325, 329, 583 S.E.2d 700, 704 (2003), citing *U.S. v. Ursery*, 518 U.S. 267, 284-88 (1996). Therefore, we conclude that there is not a sufficient criminal effect under this statute to invoke double jeopardy.

The fifth factor asks whether the behavior to which the statute applies is already a crime. Section 19-1 provides a civil remedy for public nuisance. The statute defines public nuisance as follows:

[t]he erection, establishment, continuance, maintenance, use, ownership or leasing of any building or place for the purpose of assignation, prostitution, gambling, illegal possession or sale of alcoholic beverages, illegal possession or sale of controlled substances as defined in the North Carolina Controlled Substances Act, or illegal possession or sale of obscene or lewd matter.

N.C. Gen. Stat. § 19-1 (2003). There is a correlating criminal statute regarding prostitution. *See* N.C. Gen. Stat. § 14-203 *et seq*. However, " 'this fact is insufficient to render' " the civil remedy " 'criminally punitive, particularly in the double jeopardy context.' " *Beckham*, 148 N.C. App. at 286, 558 S.E.2d at 258, citing *Hudson*, 522 U.S. at 105 (citations omitted).

The sixth and seventh factors ask whether any purpose, other than criminal punishment, to which the statute may rationally be connected is assignable to it, and whether the statute appears excessive in relation to the alternative purpose assigned. We hold that there is an alternative purpose that is assignable to this statute. As discussed *supra*, there is a remedial purpose behind this civil remedy since it allows the government to recover the cost of investigating and prosecuting violators, and it disables the illegal activity which allows the general public to recover its sense of safety and well-being. The effect that the statute has on criminal activity is not excessive in relation to these benefits.

Having examined N.C. Gen. Stat. § 19 in light of the two-part analysis established by *Hudson*, we find no clear proof that the true legislative intent of the statute is to impose a criminal penalty. Accordingly, we reject defendants' assignment of error that

N.C. Gen. Stat. § 19 constitutes punishment under a double jeopardy analysis.

[2] Defendants also argue that the trial court erred by granting plaintiff's motion for summary judgment awarding plaintiff injunctive relief, an order of abatement, and an order of forfeiture of personal property. Defendants argue that the trial court violated their constitutional right to a jury trial. We disagree.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). "When a motion for summary judgment is made and properly supported . . . the adverse party may not rest upon the mere allegations or denials of his pleading, but must, by affidavit or otherwise, set forth *specific facts* showing that there is a genuine issue for trial." *Five Star Enters., Inc. v. Russell*, 34 N.C. App. 275, 278, 237 S.E.2d 859, 861 (1977).

A public nuisance is defined to include, *inter alia*, "[e]very place which, as a regular course of business, is used for the purposes of . . . prostitution, and every such place in or upon which acts of . . . prostitution[] are held or occur." N.C. Gen. Stat. § 19-1.2(6) (2003). Additionally, all "money or other valuable consideration . . . received or used in . . . prostitution" is deemed a nuisance. N.C. Gen. Stat. § 19-1.3(3) (2003).

Section 19-6 provides for forfeiture of all moneys that are declared to be a nuisance:

> An amount equal to the sum of all moneys estimated to have been taken in as gross income from such unlawful commercial activity shall be forfeited to the general funds of the city and county governments wherein such activity took place, to be shared equally, as a forfeiture of the fruits of an unlawful enterprise, and as partial restitution for damages done to the public welfare.

N.C. Gen. Stat. § 19-6 (2003).

With regard to the proof required to show knowledge of nuisances involving prostitution, the statute provides that "evidence that the defendant knew or by the exercise of due diligence should have known of the acts or conduct constitutes proof of knowledge." N.C. Gen. Stat. § 19-1.1(1a) (2003).

In the case *sub judice*, the trial court notes in its order of summary judgment that

> The plaintiff has offered evidence in support of its motion in the form of affidavits and portions of the transcript of the defendants' prior criminal trial and depositions. The defendants have offered no evidence in response . . . except the "verified" answer. The defendants' responses to the specific allegations are simple, mostly one-word, responses: "Admitted" or "Denied." When questioned during depositions about the nature of operations at their property and the activities being undertaken there, the defendants invoked their privileges against self-incrimination.

The State's evidence is sufficient to prove that defendants engaged in nuisance activity, and that the proceeds of the activity should be forfeited. Defendants provided no evidence to refute plaintiff's account of defendants' activity, and therefore failed to raise a genuine issue of material fact. Accordingly, we conclude that summary judgment was appropriate. We further note that summary judgment does not deprive defendants of their right to a jury trial. The right to a jury trial accrues only when there is a genuine issue of fact to be decided at trial. *See Kidd v. Early*, 289 N.C. 343, 368-69, 222 S.E.2d 392, 409 (1976). For these reasons, we overrule this assignment of error.

[3] Defendants next argue that the trial court erred by granting plaintiff summary judgment on the issue of damages. We agree.

Section 19-6 states in pertinent part the following:

> Upon judgment against the defendant or defendants in legal proceedings brought pursuant to this Article, *an accounting shall be made by such defendant or defendants of all moneys received by them which have been declared to be a nuisance under this Article.* An amount equal to the sum of all moneys estimated to have been taken in as gross income from such unlawful commercial activity shall be forfeited to the general funds of the city and county governments wherein such activity took place, to be shared equally, as a forfeiture of the fruits of an unlawful enterprise, and as partial restitution for damages done to the public welfare.

(emphasis added).

In the case *sub judice*, both defendants filed affidavits on 29 October 2002 stating the following:

1. I am aware of the order of Judge Lindsay R. Davis, Jr. dated August 12, 2002, which states that I should provide an accounting for all gross income earned from Rose Spa from 1991 to the present date including the dates and amounts of each item of income, with a detailed description of goods or services provided therefore.

2. It is impossible for me to comply with the letter of that order since all the records relative to the income of Rose Spa and any description of goods or services provided are presently there, in the possession of the Internal Revenue Service and the United States Attorney's Office for the Middle District of North Carolina. My lawyer advises me that he has asked that the records be copied and the copies returned to me, but that the Federal Authorities have refused to return the items. In addition, it may be practically impossible for anyone to determine a separate accounting for each item of income; and, unless the description of services provided appear on the document held by the Federal Authorities, I have no knowledge as to the specific nature of them.

3. I have earlier provided all information concerning gross income from Rose Spa to Mrs. Erma T. Reynolds. I have instructed my counsel to release all that information to this Court, however, it is my belief that the plaintiff in this action has already filed copies of my business tax returns from the past several years. A [sic] this time, I can do no more by way of an accounting.

Defendants later filed a response to the motion for summary judgment on damages stating that "the amount of damages, if any, is a subject for resolution of contested factual and legal issues." The only evidence presented on the issue of damages was the State's affidavit by Erma Reynolds ("Reynolds") stating that she was defendants' accountant from 1991 or 1992 until 2001, that she prepared defendants' income tax returns during those years, that her records show defendants' income over that period of time to be $1,633,137.13, and providing defendants' tax records for those years. Based on this information alone, the trial court awarded plaintiff damages in the amount of $1,633,137.13.

We conclude that while the total amount of gross income from Rose Spa may be calculated based on the accountant's copies of defendants' tax records, the amount of gross income derived from

defendants' unlawful activity is disputed. Thus, summary judgment on the issue of damages was premature. Thus, we reverse the trial court's summary judgment on the issue of damages.

Defendants also argue that the damages award was excessive pursuant to the Eighth Amendment of the United States Constitution and Article I, Section 27 of the North Carolina Constitution. Because we reverse the trial court's summary judgment on damages, it is unnecessary to address this assignment of error.

For the aforementioned reasons, we hereby affirm in part, and reverse in part the judgment of the trial court, and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Judges WYNN and McCULLOUGH concur.