*Doe on dem* of JOHN McCONNELL, &c. *v.* ABNER McCONNELL.

A paper writing purporting to be a will, *proved* before the proper tribunal, in 1810, by the oath of *one* witness, is *color of title* for the lands disposed of therein.

(A sketch given of the history of the doctrine of *color of title*, in this State.)

(*Grant* v. *Winbourne*, 2 Hay. 220; *Pearce* v. *Owens*, 2 Hay. 234; *Hill* v. *Wilton*, 2 Mur. 14; *Riddick* v. *Leggett*, 3 Mur., 539; *Rogers* v. *Mabee*, 4 Dev. 180; *Episcopal Church* v. *Newbern Academy*, 2 Hawks, 233; *Tate* v. *Southard*, 3 Hawks, 119; *Dobson* v. *Murphy*, 1 D. & B., 586; *Callender* v. *Sherman*, 5 Ire., 711; *Sutton* v. *Westcott*, 3 Jon. 283, cited and approved.)

EJECTMENT, tried before *French, J.*, at Spring Term 1861 of the Superior Court of IREDELL.

The plaintiff made title through a paper-writing, purporting to be the will of one John McConnell, which had been admitted to probate at February Term 1810, of the Court of Pleas and Quarter Sessions of Iredell County. The entry of probate, upon the record of that term, is : "Tuesday February 20th 1810; Present, James Crawford, Joseph Gray, A. Torrence, M. Matthews and George Robison, Esquires. Last will of John McConnell, proven by Andrew Hart. Letters issued to Jane McConnell, and qualified."

The *will* was: "In the name of God, Amen! I, John McConnell, of the county of Iredell, &c., being of sound and perfect mind and memory, &c., do, this November 16th 1808, make and publish my last will, &c., [going on to devise all his property, including the land in question.] Witness whereof, I, the said John McConnell have to this, my last will and testament. Witness whereof, I have put my hand and seal, the day and year above written.

(Signed,)          JOHN $\overset{\text{his}}{\bowtie}$ McCONNELL.
                                       mark.

*Test*: Andrew Hart, (*jurat*.)

Signed, sealed, published and delivered by the said John McConnell, the Testator, as his last will and testament in

the presence of us, who were present at the signing and sealing thereof." [No other subscribing witnesses.]

The plaintiff claimed that such paper-writing, as proved, constituted color of title.

His Honor intimated an opinion that it did not.

Verdict for the defendant, &c.; Appeal by the plaintiff.

*Boyden & Bailey and Wilson*, for the appellant.
*W. P. Caldwell*, contra.

RODMAN, J. The precise question here presented has never been decided in this State that we are aware of. It has been held that a writing, purporting to be a will of lands, which has but one subscribing witness, and *which has never been proved as a will*, is not color of title : *Callender* v. *Sherman*, 5 Ire. 711: and so of a copy of such a writing taken from the book of records of wills in a county : *Sutton* v. *Westcott*, 3 Jon. 283. Those cases obviously differ from this, as here the writing was proved as a will. The difficulty is, that in 1810 a will of personalty was good if attested by one witness, whereas a will of realty was required to be attested by two.

Realty might be devised by a holographic will, with one or no attesting witness, but then the hand-writing of the testator was required to be proved by those witnesses.

So that, unless we assume, as we cannot, that something more was done than the record sets forth, we cannot hold that this will was proved so as to pass realty, and consequently the title of the devisor did not pass to the devisees.

That, however, is not the question. Was it color of title ? In *Grant* v. *Winbourn*, 2. Hay. 220, it was said that it was the intent of the act of 1716, "that where a man settled upon and improved lands, upon the supposition that they were his own, and continued in the occupation for seven years, he should not be subject to be turned out of possession: hence arises the necessity for color of title, for if he has no such color

or pretence of title, he cannot suppose the lands are his own, and he settles on this in his own wrong."

Afterward, it was held that, whether or not the writing was color of title, did not depend on the belief of the grantee at the time, for, even if he knew that the land was the property of another person than his grantor, it might still be color: *Riddick* v. *Leggett*, 3 Mur. 539; *Rogers* v. *Mabee*, 4 Dev. 180: but, on its professing to pass a title, which it fails to do, either from want of title in the person making it, " or from the defective mode of conveyance employed: but it must not be so obviously defective that no man of 'ordinary capacity' could be misled by it:" *Tate* v. *Southard*, 3 Hawks. 119; *Dobson* v. *Murphy*, 1 D. & B. 586. In endeavoring to apply this rule, and to ascertain whether this will was so obviously defective for the purpose of passing land as to come within it, we are to exclude the presumption generally applicable, that every man is supposed to know the law; for the statute upon which the whole doctrine of color of title is founded, recites, as the evil to be remedied, that many persons had gone into possession of land upon titles having patent defects, *e. g.* on sales by administrators, endorsements of patents, &c., which, on the supposition that all men know the law, could have deceived no one, and would not have deserved protection. So, in *Tate* v. *Southard*, it is said that "a writing, where the title does not pass by reason of the defective mode of conveyance employed," is color of title: so is a deed by husband and wife without her privy examination, *Pearce* v. *Owens*, 2 Hay. 234; a deed purporting to be by an attorney without any authority appearing, *Hill* v. *Wilton*, 2 Mur. 14; an unconstitutional act of the legisture, *Episcopal Church* v. *Newbern Academy*, 2 Hawks 233. All these are examples of patent defects which could not have misled a lawyer. We think that, in this case, the defect in the probate of the will was not so obvious but what it might have misled a man of ordinary capacity. The will appears to have been proved; it does not, manifestly, or except by a

course of legal reasoning, appear not to be proved so as to pass land. Had the record of the probate stopped after saying that the will was proven, and not added the words "by Andrew Hart," it might have been very doubtful whether it would not be presumed to have been proven in the only way it could legally have been, as a holographic will.

Must it be presumed to occur to every man of ordinary capacity, that the addition of these words vitiated it? To a lawyer, upon reflection, it would. The statute from which the doctrine of color of title is derived, is a statute of repose. Courts have long since ceased to be astute to defeat statutes of limitation. It has been well said that through them, Time, which is constantly destroying our muniments of title, is as constantly curing the loss.

It may be, that had this title been earlier assailed, the plaintiff might have proved the due execution, which, after fifty-eight years, he cannot be expected to do. In England, where wills of lands are not admitted to probate in the Ecclesiastical courts, the rule is, that a will thirty years old, produced from the proper custody, and accompanied by possession of the land, proves itself' Stark, Ev. 521; 2 Greenl. Ev. § 679.

PER CURIAM.                    Judgment reversed, &c.