MUSCO BUTLER AND WIFE, ESTHER R. BUTLER, v. N. A. BELL AND WIFE, EVA BELL ET AL.

(Filed 16 March, 1921.)

1. **Deeds and Conveyances—Revocation—Estates—Merger.**

Where land is conveyed in fee, reserving a life estate to the grantors, and thereafter they make a deed to the same lands to the same grantors, conveying an absolute fee simple title, stating its purpose to revoke the prior deed, the question of merger does not arise, and instead of being two estates, one a particular estate for life and the other a remainder in fee, the prior deed being revoked by the second one, there is but one estate, which is an absolute fee simple one.

2. **Deeds and Conveyances — Mental Incapacity — Voidable Deeds — Purchaser.**

A deed by one legally incompetent to make it is not void, but valid for all purposes, until assailed or set aside at the instance of those having an interest to impeach it, and a subsequent grantee who is not an innocent purchaser for value without notice of the incapacity of the original grantor stands in the same category as his grantor.

3. **Deeds and Conveyances—Voidable Deeds—Color of Title.**

A deed to lands voidable for the incapacity of the grantor to make it, is not for that reason deprived of its sufficiency as color of title.

4. **Same—Purchasers—Limitation of Action—Adverse Possession.**

A grantee who has acquired a voidable title to lands under sufficiently colorable deeds, may ripen his defective title into a good one by sufficient adverse possession thereunder, which is a distinct or separate source of title from the one under which he had entered possession of the lands.

5. **Equity—Laches—Limitation of Actions—Deeds and Conveyances— Voidable Deeds—Merger—Adverse Possession—Color of Title.**

Where a voidable but colorable deed to lands reserving a life estate has merged under a second and voidable deed conveying the title in fee without reservation, and such right has been acquired by a subsequent purchaser of the lands, equity will not permit an adverse claimant with notice to sleep upon his right until the purchaser has acquired title by sufficient adverse possession under the color of his deed, and then successfully assert his right.

6. **Deeds and Conveyances—Color—Possession—Notice.**

The possession of one under color of title is notice of his claims of title to the lands.

7. **Actions—Ejectment—Deeds and Conveyances—Cancellation—Cloud on Title.**

An action to set aside voidable deeds under which the defendants in possession claim the lands in controversy, and for the possession of the land, is one in ejectment, the remedy of cancellation being ancillary to the main relief sought to remove a cloud upon the title, and to recover the *locus in quo.*

**8. Limitation of Actions—Deeds and Conveyances—Color of Title—Coverture—Statutes.**

In this suit to cancel the deeds to the *locus in quo,* because of the mental incapacity of the grantor to make them, and under which the defendant in possession claims title by adverse possession under color: *Held,* the coverture of the plaintiff will not avail her to repel the bar of the statute of limitations, which has run in favor of the defendant's title. C. S., 408.

APPEAL by plaintiff from *Connor, J.,* at September Term, 1920, of SAMPSON.

It appears in the record that prior to 26 June, 1903, W. A. Bell was the owner of several tracts of land in Sampson County, and desiring to divide them among certain of his children and grandchildren, he caused them to be surveyed, and then conveyed the lots, as shown in the survey, to his children and grandchildren, except the plaintiff, Esther R. Butler, one of his children, who alleges that her father intended to give and convey to her the 100 acres of his land, which is the subject of this suit, and that he made his will in 1898, and devised it to her therein. He died in 1905. It further appears that, on 26 June, 1903, the defendant, N. A. Bell, son of W. A. Bell, procured from the latter and his wife a deed purporting to convey to N. A. Bell the said 100 acres, but reserving a life estate to themselves; and that on 30 April, 1904, N. A. Bell received another deed for the same land from W. A. Bell and his wife conveying to them, N. A. Bell and wife, a fee simple absolute in the same land without any condition or reservation whatever, and with full covenants. It is expressed in this deed that it is made for the purpose of revoking the former deed to the same person for the same tract of land. Afterwards, on 21 January, 1905, the defendants, N. A. Bell and wife, conveyed by deed to their codefendant, Nathan Barefoot, the same tract of land in fee simple and without any condition or reservation, and with full covenants of seizin, warranty, and against incumbrances.

Plaintiff brought this action to set aside said deeds, and alleged that at the time the first two deeds were executed by W. A. Bell and wife, W. A. Bell was not mentally capable of making them, and that the defendants, N. A. Bell and wife, Eva Bell, and Nathan Barefoot, well knowing that to be the case, deliberately and fraudulently conspired between themselves to take advantage of it in order to procure the first two deeds, so that the land could be conveyed to the defendant, Nathan Barefoot, which was afterwards done in pursuance of the previous understanding and conspiracy between them.

Defendants denied that there had been any fraudulent conduct whatsoever on the part of the three defendants named, or any of them, and especially denied that W. A. Bell was *non compos mentis,* or even of

weak mind, when the first two deeds were made, or that any advantage was taken of him by them, or either of them. That all of the transactions, including the execution of the Barefoot deed, were open and above board, and the deeds founded upon a valuable consideration, and nothing was done by them, or either of them, which should impeach or impair their validity, and that the defendants were purchasers in good faith and for valuable considerations. They further aver that all of the said deeds were duly probated and registered immediately after their execution, and have been spread upon the public record ever since and until the present time, and that plaintiffs had full notice and knowledge thereof for many years before this action was commenced in 1916, and especially for more than three years; and, therefore, they plead that for this reason alone, if for no other, the plaintiffs are debarred from any recovery in this case. They further aver, in denial of plaintiffs' title and right to recover the land in controversy, that at the time he received his deed, and ever since, and for more than seven years before this action was brought, the defendant, Nathan Barefoot, has been in the open, notorious, and adverse possession of this land, claiming the same as his own, under the said deed, which was known to plaintiffs, and that even if there was originally any defect in his title under said deeds, he has acquired a good and indefeasible one by virtue of his possession, held adversely under the same, and continued as aforesaid.

The jury returned the following verdict, upon the issues submitted to them:

"1. At the time of the execution of the first deed from Willis A. Bell and wife to the defendant, N. A. Bell, on 26 June, 1903, did the said Willis A. Bell have sufficient mental capacity to execute a deed? Answer: 'No.'

"2. At the time of the execution of the second deed from Willis A. Bell and wife to N. A. Bell and wife, on 30 April, 1904, did the said Willis A. Bell have sufficient mental capacity to execute a deed? Answer: 'No.'

"3. Was Nathan Barefoot an innocent purchaser for value, without notice of any lack of mental capacity of Willis A. Bell to execute the deeds referred to in issues one and two, for the land described in the deed from N. A. Bell and wife to Nathan Barefoot, dated 25 June, 1905? Answer: 'No.'

"4. Is the plaintiffs' cause of action barred by the three years statute of limitations? Answer: 'Yes.'

"5. Is the plaintiffs' cause of action barred by the seven years statute of limitations? Answer: 'Yes.'"

The court charged the jury that although an estate for their lives was reserved in the first deed by W. A. Bell and his wife, it was merged by the second deed, and the Barefoot deed in the remainder, and, there-

fore, the statute of limitations began to run against plaintiffs when the merger took place, and that, as Nathan Barefoot had held the possession of the land continuously, notoriously, and adversely under his deed for more than three years, and also for more than seven years before the commencement of this action, the plaintiffs' cause of action, if they had any, is barred by the statute of limitations, and that the facts being admitted, the jury should answer the fourth and fifth issues "Yes."

Judgment on the verdict, and appeal by plaintiffs.

*Grady & Graham for plaintiffs.*
*Fowler & Crumpler for defendants.*

WALKER, J., after stating the case: The admitted facts, as above set forth, justified his Honor's instruction to the jury on the third and fourth issues. It will be observed that the issues did not correspond with the allegations, as stated in the complaint, and denials in the answer. There is no finding of a conspiracy to defraud the plaintiffs, nor of any actual fraud committed by defendants. The simple and only finding is, that at the time the two deeds were made by W. A. Bell he did not have sufficient mental capacity to execute them, and that Nathan Barefoot purchased from N. A. Bell and his wife with notice of this fact. We need not consider this feature of the case any further, as we will base our decision on other grounds. The plaintiffs contended that there was no merger of the life estate with the remainder, and that the statute of limitations did not bar them, as they could not sue until the life estate expired. Defendants contended that there was such a merger, and therefore no life estate to prevent the statute from barring the plaintiffs.

According to our view of the record, the question of merger does not arise. The first deed, or the one to N. A. Bell, alone, dated 26 June, 1903, and registered in Book 126, at page 438, conveyed the fee to him, reserving a life estate to the grantors. The second deed, dated 30 April, 1904, and registered in Book 130, at page 44, conveys the fee simple absolute to N. A. Bell and his wife, Eva A. Bell, without any reservation or condition, and contains the following recital: "This deed is for the purpose of revoking prior deed for said land, which is now on record, and the land known as the "Bass place," found in Book 126, page 438." The deed which is revoked is the first deed, the one to N. A. Bell alone, each of the two deeds conveying the same tract of land, as is alleged in the complaint and admitted in the answer. So that instead of there being two estates, one a particular estate for life, and the other a remainder in fee, there is but one estate, the highest known to the law, as Blackstone says, and that is a fee simple absolute, and this is so, because the former deed, by consent of the parties to it, has been revoked and

set aside by their solemn legal act, it being the one in which the grantors reserved a life estate, and the parties then substituted therefor a deed conveying the entire interest and estate in the land in fee simple.  Both deeds conveyed the land, even though it was afterwards found that the grantor did not have sufficient mental capacity to do so.  But they were not void for this reason, but only voidable, and were valid for all purposes, until assailed and set aside at the instance of those having an interest to impeach them.  13 Cyc., 591; *Sprinkle v. Wellborn,* 140 N. C., 163.  And the deed to the defendant, Nathan Barefoot, stands in the same category, for at most it was only voidable when attacked by the interested party, the *feme plaintiff,* and valid until set aside at her instance.  It therefore constituted color of title, and when the defendant, Nathan Barefoot, entered into possession under it and continued in possession openly, notoriously, continuously, and adversely for seven years, he thereby acquired a good title as against the true owner.  There can be no question that the deed to Barefoot was good color of title.  It had the appearance of passing the title, and professed to pass it, but failed to do so.  *Seals v. Seals,* 165 N. C., 409; *Norwood v. Totten,* 166 N. C., 648, where the principal cases are collected by the *Chief Justice; McConnell v. McConnell,* 64 N. C., 342; *Perry v. Perry,* 99 N. C., 273; *Ellington v. Ellington,* 103 N. C., 58; *Smith v. Proctor,* 139 N. C., 324. We held in *Seals v. Seals, supra:* "A claim to property under a conveyance, however inadequate to carry the true title, and however incompetent the grantor may have been to convey, is one under color of title, which will draw to the possession of the grantee the protection of the statute of limitations," citing *Wright v. Matheson,* 18 How. (U. S.), 50 (15 L. Ed., 280); *Beaver v. Taylor,* 1 Wall. (U. S.), 637 (17 L. Ed., 601); *Cameron v. U. S.,* 148 U. S., 301 (37 L. Ed., 461).  And our cases are to the same affect.  *McConnell v. McConnell, supra; Burns v. Stewart,* 162 N. C., 360.  So that while Barefoot did not get the title by his deed, but acquired it in another way and from a different source, by his adverse possession under color, this title must, therefore, prevail against the plaintiffs' prior right.  Judge Connor charged that plaintiffs knew of the facts, that Barefoot was in possession, claiming to hold adversely to them under his deed, which conveyed the entire title, when taken in connection with the deed of W. A. Bell and wife to his grantors, N. A. Bell and wife, the first deed to N. A. Bell having, by consent of parties, been revoked and put out of the way as if it had never existed. There is no room for arguing that there are two separate estates, one for life and the other in remainder, as the last deed, or the one to N. A. Bell and wife, passed only one estate, which was a fee simple absolute, and destroyed the former life estate instead of merging it.  If that is not incontrovertibly true, and the parties intended that there should be

two estates, there was no use in making the last deed; and, besides, it clearly expresses on its face the contrary intention of the parties. If there had been a case of merger, equity would not keep the two estates apart, for it will not aid one who is guilty of laches in prosecuting his rights, or who lies by while the title of another is maturing with his full knowledge, and does nothing, when it was so easy to prevent the operation of laches or the statute of limitations by simple procedure. Litigation must end somewhere (*interest reipublicae ut sit finis litium*). Equity aids the vigilant, not the indolent. *Justice Story* well observed that it has often been a matter of regret in modern times that in the construction of the statute of limitations (21 Jac., 1, c. 16), the decisions had not proceeded upon principles better adapted to carry into effect the real objects of the statute; that instead of being viewed in an unfavorable light as an unjust and discreditable defense, it had not received such support as would have made it what it was intended to be, emphatically a statute of repose. It is a wise and beneficial law, not designed merely to deprive any one of his just rights by lapse of time, but to afford security against stale demands. The possession of the land by defendant, Nathan Barefoot, was, in law, notice of his claim. *Tankard v. Tankard,* 79 N. C., 54.

And as to the maxim that the law aids the vigilant and not those who sleep over their rights, *Sir William Blackstone* said, that in all possessory actions there is a time of limitation settled, beyond which no man shall avail himself of the possession of himself or his ancestors, or take advantage of the wrongful possession of his adversary; for if he be unreasonably negligent, the law refuses afterwards to lend him any assistance to recover the possession, both with a view to punish his neglect, and also because it is presumed that the supposed wrongdoer has in such a length of time procured a legal title, otherwise he would sooner have been sued. And it was said by the Vice Chancellor, in *Manby v. Bewick,* 3 K. & J., 352, the Legislature has in this, as in every civilized country that has ever existed, thought fit to prescribe certain limitations of time, after which persons may suppose themselves to be in peaceable possession of their property and capable of transmitting the estates of which they are in possession without any apprehension of the title being impugned by litigation in respect of former transactions.

This is really ejectment, the remedy of cancellation being resorted to as ancillary, merely to the primary relief, or, in other words, it is in its essence a suit to remove a cloud or obstruction out of the way of effectuating the main purpose, which is the recovery of the land. Against such a recovery the statute bars, for it is so expressly provided therein.

The coverture of plaintiff will not avail her. Consol. Statutes, vol. 1, sec. 408, and note; *Carter v. Reaves,* 167 N. C., 131; *Graves v. Howard,* 159 N. C., 594.

We therefore conclude that plaintiffs were barred by the three years statute, and also by adverse possession under color for seven years, as held by the court below.

No error.