IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-481

Filed 01 August 2023

Forsyth County, No. 21 CVS 1539

WILLIAM HINMAN and JOANNE W. HINMAN, Plaintiffs,

v.

WADE R. CORNETT and TERESA B. CORNETT, Defendants.

Appeal by Defendants from an order entered 22 November 2021 by Judge Susan E. Bray in Forsyth County Superior Court. Heard in the Court of Appeals 2 November 2022.

*Craige Jenkins Liipfert & Walker PLLC, by Thomas J. Doughton, for Plaintiffs-appellees.*

*The Dawson Law Firm PC, by Kenneth Clayton Dawson, for Defendants-appellants.*

WOOD, Judge.

This is an appeal from a summary judgment order settling a property dispute between disgruntled neighbors and involves questions of the parties' property interests in an old easement. The summary judgment order granted one neighbor's trespass claim and dismissed the other neighbor's counterclaims for adverse possession and nuisance. For reasons explained below, we hold that the adverse possession counterclaim was improperly dismissed, reverse the trial court's summary judgment order, and remand the matter to the trial court for further proceedings.

## I.    Background

In 1983, the Cornetts, husband and wife, rented a home from Ms. Tilley before purchasing the same property in 1995. The entire property comprises several tracts of land which Ms. Tilley acquired at different times prior to conveying them to the Cornetts. For instance, the home rests on what has now been labeled Tract 1. As the diagram below shows, this square, half-acre tract abuts the main road to its north, and a driveway extends from the road along the tract's western side. Tract 2, similar in size and shape to Tract 1, comprises the Cornetts' backyard and rests behind Tract 1, to its south. The same driveway runs along this tract's western border as well. Behind and adjoining Tract 2 of the Cornetts' property lies a larger property originally owned by the Churches, a family who, by all accounts, maintained a cordial relationship with the Cornetts for the duration of their ownership. In 2019, however, the Churches sold this larger, southern property to the Hinmans, and relations between the Cornetts and these newcomers quickly soured.

Armed with a recent land survey, the Hinmans insisted the Cornetts were encroaching on the Hinmans' recently acquired property and requested that the Cornetts remove such encroachments. The survey showed that the Hinmans owned the land containing the driveway running along the western sides of Tracts 1 and 2 as well as a strip of land several feet wide running along the eastern side of the driveway and into what a casual observer might mistake for the Cornetts' land. The Hinmans identified the corridor at issue, featuring the driveway and the adjacent

strip of land, as an easement conveyed by their predecessor in title to Ms. Tilley. Ms. Tilley subsequently conveyed the easement to the Cornetts when she conveyed the two tracts of land to them. Allegedly oblivious to this easement and believing that they owned the disputed corridor, the Cornetts had used the driveway to access both Tracts 1 and 2 of their property, paved and maintained the driveway, and allowed guests and others to park on the driveway. On a strip of land adjacent to the driveway, the Cornetts maintained gardens, fences, a brick column, and several trees. Also, two carports extended from the home on Tract 1 to the driveway, thus extending into the adjacent strip of land in the corridor easement. These two carports and the other structures existed on the land prior to 2000. The brick column predated the Cornetts' ownership of the property. The Cornetts began planting trees and a garden in 1983. They added another carport and a fence in 1991 and 1992 respectively. Another carport was added in 1996. Since 1999, the Cornetts further maintained another garden, crepe myrtle trees, and a fence. The Cornetts refused to remove these alleged encroachments. The Hinmans built a fence, with a gate, along the boundary between the driveway and Tract 1 and subsequently filed suit against the Cornetts.

In their complaint, filed 23 March 2021, the Hinmans alleged trespass. The Cornetts counterclaimed, alleging that they had obtained title of the disputed corridor easement by adverse possession, that the twenty-year statute of limitations for the

recovery of adversely possessed land barred the Hinmans' trespass claim, and that the Hinmans' new fence constituted a nuisance.

The Hinmans moved for summary judgment, filed 22 October 2021, upon their claims of trespass and requested an injunction for the removal of the alleged encroachments. The Hinmans alleged "that there is no genuine issue as to any material fact" that the Cornetts were trespassing upon their land. In support of their summary judgment motion, the Hinmans filed affidavits, including their own, and one from the land surveyor. The Cornetts responded with their own motion for summary judgment, filed 3 November 2021, requesting the trial court grant them title to the strip of land in the corridor easement between the driveway and the Cornetts' property. They also requested the trial court hold that the Hinmans' trespass claim was barred by the applicable twenty-year statute of limitations and contested the Hinmans' construction of a "nuisance fence."

After a 9 November 2021 hearing on the matter, the trial court granted the Hinmans' motion and dismissed the Cornetts' counterclaims in a summary judgment order filed 22 November 2021. The order states:

> [S]ummary judgment is granted in favor of plaintiffs against defendants on all claims asserted by the plaintiffs and that defendants counterclaims are dismissed with prejudice and that defendants are further ordered to remove all structures, within 15 days of the date of this order, that are encroaching on Plaintiffs' property including the portion of Plaintiffs two carports that are located on Plaintiffs property, the split rail fence, the lion statue, chain link fence and post, a brick column and the

concrete base to the smaller carport. Attached hereto as Exhibit A is a survey that shows the encroachments and Exhibit B which shows tracts 1 and 2 of Defendants property. It is further ordered that the recorded easement as set out in Book 1890 Pages 1245-1247 of the Forsyth County Register of Deed [sic] is on land owned by the Plaintiffs and the easement only applies to tract 2 as set out in Book 1890 page 1247 and shown on Exhibit B. Thus, the Defendants may only use the 30-foot recorded easement to access tract 2. Defendants may not use the recorded easement to access tract 1 which includes but is not limited to accessing their current carports. In addition, Defendants cannot use the area in the recorded easement to park vehicles on or to allow third parties to park vehicles or delivery vehicles on. In addition, Defendants may not drive on or otherwise use the paved driveway to the West of their property which is outside the 30-foot recorded easement. Defendants may use the portion of the paved driveway that is contained within the 30-foot recorded easement but only to access tract 2 of their property. Finally, the fence as built by the Plaintiffs along the eastern boundary of the 30-foot easement is legal under North Carolina law and may remain and that the cost of this action be taxed against the Defendants.

Attached to the order are two survey exhibits of the same properties, which are convenient for our demonstrative purposes here:





The Cornetts appeal the order as a final judgment pursuant to N.C. Gen. Stat. § 7A-27(b).

## II.    Standard of Review

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2022). We review a trial court's summary judgment order *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (quoting *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008)). We cannot affirm a trial court's summary judgment order if a "genuine issue as to any material fact" remains when viewed in the light most favorable to the non-moving party. *Forbis*, 361 N.C. at 524, 649 S.E.2d at 385 (quoting N.C. R. Civ. P. 56(c)).

## III.    Discussion

Challenging the trial court's summary judgment order, the Cornetts argue the trial court erred when it determined that the Cornetts may not utilize the easement to access their Tract 1, failed to consider the presence of a prescriptive easement, improperly ruled on the matter of adverse possession where material facts remained

contested, ordered the Cornetts to remove items alleged to have trespassed upon the Hinmans' land, and allowed the Hinmans to establish a nuisance fence. We address these issues in turn.

## A. Easement to Access Tract 1

We first address whether the trial court erred in granting summary judgment as to whether the Cornetts may use the driveway to access Tract 1 of their property. As explained above, the thirty-foot wide easement contains the driveway, or some part of it, and a strip of land east of the driveway. This issue concerns only the driveway and not the disputed strip of land which we discuss below.

"An easement is an interest in land" and is generally treated as a contract when deeded. *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962). Easements may either be appurtenant or in gross. *Shingleton v. State*, 260 N.C. 451, 454, 133 S.E.2d 183, 185 (1963). "An appurtenant easement is one which is attached to and passes with the dominant tenement as an appurtenance thereof; it is owned in connection with other real estate and as an incident to such ownership." *Id.* It "is incapable of existence apart from the particular land to which it is annexed." *Id.* Because an appurtenant easement runs with the land, it "passes with the transfer of the title to the land." *Id.* at 454, 133 S.E.2d at 186. An appurtenant easement exists between the dominant tenement (the tract that benefits from the use of the easement) and the servient tenement (the tract that is burdened by the use of the easement). *Ingraham v. Hough*, 46 N.C. (1 Jones) 39, 43

(1853). An appurtenant easement is only allowed to be used "in connection with an estate to which it is appurtenant, and cannot be extended to any other property which [the easement owner] may then own or afterwards acquire." *Hales v. Atl. Coast Line R.R. Co.*, 172 N.C. 104, 107, 90 S.E. 11, 12 (1916). In contrast, an easement in gross is more like a personal license, a permit, and "is not appurtenant to any estate in land and does not belong to any person by virtue of his ownership of an estate in other land, but is a mere personal interest in or right to use the land of another." *Shingleton*, 260 N.C. at 454, 133 S.E.2d at 185. An easement in gross generally terminates "with the death of the grantee" unless abandoned or otherwise extinguished. *Id.*

The easement here was conveyed by deed with a dominant tract of land and is presumed to be appurtenant. *Id.* at 455, 133 S.E.2d at 186. Therefore, it ran with the land when Ms. Tilley deeded the dominant tenement to the Cornetts. We now look at what interests Ms. Tilley received.

Ms. Tilley gained ownership of Tracts 1 and 2 through two separate deeds. The deed to Tract 2, which does not contain road frontage, contained the easement at issue. After describing the metes and bounds of Tract 2, it reads, "The Grantor also conveys to the Grantee a road right-of-way or easement to and from the above described parcel of land for purposes of ingress, egress and regress, said right-of-way being 30.0 feet in width and described as follows . . . ." When Ms. Tilley was deeded

Tract 1, no similar easement appears. In fact, the record is devoid of any evidence showing that Ms. Tilley acquired an access easement for Tract 1.

Ms. Tilley subsequently deeded both Tracts 1 and 2 as well as the access easement to the Cornetts via a single deed. That deed, after describing Tracts 1 and 2 by metes and bounds, reads, "Also conveyed herein is a thirty (30) foot right-of-way or easement for the purpose of ingress, egress and regress from Griffin Road more particularly described as follows . . . ."

Just as "no one can transfer a better title than he himself possesses," no one can transfer a greater easement than he himself enjoys. *Miller v. Tharel*, 75 N.C. 148, 152 (1876). Thus, when Ms. Tilley conveyed Tract 1, Tract 2, and the access easement to the Cornetts via a single deed, the easement only benefited and allowed access to Tract 2 from the main road. Ms. Tilley could only transfer an interest in property, in the form of an access easement here, that she herself had received. Even if Ms. Tilley had desired to, she could not transfer an access easement to Tract 1 unless, perhaps, she had previously purchased the property that the Hinmans now owned and absorbed the original easement by merger. *See Patrick v. Jefferson Standard Life Ins. Co.*, 176 N.C. 660, 670, 97 S.E. 657, 661 (1918) ("A merger, technical or ideal, takes place when the owner of one of the estates, dominant or servient, acquires the other, because an owner of land cannot have an easement in his own estate in fee."). Yet, the record lacks any evidence for this possibility as well. All evidence suggested that the easement allowed for access to Tract 2 and that the

Hinmans' use of the easement to access Tract 1 constituted a "misuse or overburdening" of the easement. *City of Charlotte v. BMJ of Charlotte, LLC*, 196 N.C. App. 1, 20, 675 S.E.2d 59, 71 (2009). We therefore affirm the trial court's order as to the access easement for Tract 2 but not for Tract 1, which has frontage and direct access to Griffin Road.

## B. Prescriptive Easement

The Cornetts next argue that the trial court erred in granting summary judgment against them by failing to consider whether the Cornetts had gained a prescriptive easement over the disputed land. However, the Cornetts did not advance this theory before the trial court. Instead, they advanced an adverse possession counterclaim. Though the elements necessary to maintain adverse possession and prescriptive easement claims are similar, they are nonetheless distinct actions requiring distinct pleadings. We therefore cannot consider this argument on appeal. *See* N.C. R. App. P. 10(a)(1); *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount" on appeal.).

## C. Adverse Possession

We next address the issue of adverse possession. The Cornetts clarified at the summary judgment hearing and in their reply brief that they allege adverse possession only of the strip of land consisting of their garden, brick pillar, several trees, fencing, and portions of their carports. The Cornetts do not allege adverse

possession of the shared driveway, which they used with the Churches' permission and acknowledge is contained within the easement. Like the driveway, though, this disputed strip of land rests within the easement. Yet, because the Cornetts pleaded that they maintained this strip of land for over twenty years and alleged all elements necessary to support a claim of adverse possession, the Cornetts challenge the trial court's dismissal of this claim in its summary judgment order.

Adverse possession "is not favored in the law." *Potts v. Burnette,* 301 N.C. 663, 667, 273 S.E.2d 285, 288 (1981). The possessor's use of the land, therefore, "is presumed to be permissive." *Id.* at 666, 273 S.E.2d at 288.

A successful claim of adverse possession requires that the possession be "open, continuous, exclusive, actual and notorious" ("OCEAN") for the prescribed period. *Jones v. Miles*, 189 N.C. App. 289, 299, 658 S.E.2d 23, 30 (2008). Our Supreme Court has more eloquently described these requirements as follows:

> It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner.

*Locklear v. Savage*, 159 N.C. 236, 237, 74 S.E. 347, 348 (1912). The prescriptive period for adverse possession, without color of title, is 20 years. N.C. Gen. Stat. § 1-

40 (2022).

> No action for the recovery or possession of real property, or the issues and profits thereof, shall be maintained when the person in possession thereof, or defendant in the action, or those under whom he claims, has possessed the property under known and visible lines and boundaries adversely to all other persons for 20 years; and such possession so held gives a title in fee to the possessor, in such property, against all persons not under disability.

*Id.* One may assert a claim of adverse possession upon a portion of a tract of land so long as such portion is identifiable by "known and visible lines and boundaries." *Dockery v. Hocutt*, 357 N.C. 210, 218, 581 S.E.2d 431, 436 (2003). However, "his claim is limited to the area(s) actually possessed, and the burden is upon the claimant to establish his title to the land in that manner." *Id.*

We are met with an initial question: may the owner of a dominant tenement adversely possess the same land described in the easement burdening the servient tenement?

Neither party cites and we did not locate North Carolina authority definitively answering this question. One commentator who published many treatises on real property writes,

> The adverse user may be, not only by the owner of the servient tenement, but also by another person, and such other person may be one who has also an easement in the same land. That is, if there is adverse possession sufficient to divest a fee simple title to land, it will also operate to extinguish an easement in such land, without reference to whether the adverse possessor previously had himself an

estate or an easement in the land.

Herbert Thorndike Tiffany, *The Law of Real Property*, Vol. 3, 397 (Basil Jones ed., 3d ed. 1939). While helpful, this commentary does not explicitly suppose that the adversely possessed land is also the possessor's easement.

Looking beyond our borders, no other state has yet to address this question, save for the state of Washington. There, its Court of Appeals concluded that the owner of an easement in common property, held in title by a homeowners association, could adversely possess that land without offending the requisite elements of adversity. *Timberlane Homeowners Ass'n v. Brame*, 901 P.2d 1074, 1078 (1995), *superseded by statute*, Wash. Rev. Code § 36.70A.165 (2022). "Although the use was originally permissive[,] . . . the construction of a fence and a concrete patio on the property far exceeded a reasonable exercise of that easement right." *Id.*

Our precedent allows the owner of a *servient* tenement to successfully claim adverse possession so as to extinguish an easement on his own property. *Skvarla v. Park*, 62 N.C. App. 482, 488, 303 S.E.2d 354, 358 (1983). Here, though, the alleged adverse possessor is the easement owner, the owner of the *dominant* tenement. A successful action for adverse possession in this case would not only extinguish the easement but would, in effect, divest the servient estate owner of title to his land.

The principal concern with adversely possessing the land of one's own easement lies in the adverseness—or hostility—of the possession. This hostility element requires "a use of such nature and exercised under such circumstances as to

manifest and give notice that the use is being made under claim of right." *Dulin v. Faires*, 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966). "[T]his does not mean that ill will or animosity must exist between the respective claimants. It only means that the one in possession of the land claims the exclusive right thereto." *Brewer v. Brewer*, 238 N.C. 607, 611, 78 S.E.2d 719, 722 (1953). Regardless of the "length of time in the enjoyment of his easement," an easement owner cannot divest the servient owner of his land merely because he made some use of the land consistent with the easement. *Everett v. Dockery*, 52 N.C. (7 Jones) 390, 392 (1860). However, where the dominant estate owner's use of the easement is so inconsistent with its permissive use as to inhibit the rights of the servient estate owner, it follows that the possession is hostile. We therefore hold that, where the elements of adverse possession are otherwise satisfied, the owner of a dominant tenement may adversely possess the land underlying his own easement.

We briefly address another dispositive question: may a party properly claim adverse possession when he is unaware of the adverse nature of his possession? In other words, may a party adversely possess land when he mistakenly believes that he was the owner during the entirety of the prescriptive period? Our Supreme Court has answered this question in the affirmative. A party may succeed in an adverse possession claim "though the claim of title is founded on a mistake." *Walls v. Grohman*, 315 N.C. 239, 249, 337 S.E.2d 556, 562 (1985). Since 1985, this state has been among a majority of states which allow a claim for adverse possession though

the adverse possessor be oblivious to the adverse nature of his possession. *Id.* Therefore, though the Cornetts allege in their depositions that they were unaware of any encroachments upon their neighboring property and believed they owned the strip of land at issue, this mistake is not fatal.

Further, though the Cornetts admit their use of the driveway was permissive, this, too, is not fatal to their claim of adverse possession over the disputed strip of land. The disputed land here is not the driveway but the strip of land between the driveway and the Cornetts' recorded property line, said land containing a brick column, small garden, trees, fencing, and two carports. Nothing in the record suggests the Cornetts received permission from the Churches or their successor in title, the Hinmans, to possess and erect permanent structures on this disputed strip of land.

Next, we consider whether the Cornetts appropriately alleged an adverse possession claim sufficient to overcome a motion to dismiss. As our Supreme Court has held, "[a] party seeking to prove adverse possession of a portion of a parcel has the burden of pleading and proving all elements of the claim." *Minor v. Minor*, 366 N.C. 526, 531, 742 S.E.2d 790, 793 (2013). Yet, "[i]n actions to recover land, wherein the plaintiff alleges title and right to the possession, it is generally sufficient for the defendant to make a simple denial and introduce evidence of his possession for twenty years . . . in support of his denial." *Whitaker v. Jenkins*, 138 N.C. 476, 478, 51 S.E. 104, 105 (1905).

Further, "[a] party against whom summary judgment is sought 'may not rest upon the mere allegations or denials of his pleading, but must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial.' " *Koenig v. Town of Kure Beach*, 178 N.C. App. 500, 504, 631 S.E.2d 884, 888 (2006) (quoting *Enterprises v. Russell*, 34 N.C. App. 275, 278, 237 S.E.2d 859, 861 (1977)); *see* N.C. Gen. Stat. § 1A-1, Rule 56(e) (2022). Put another way, presuming without deciding the Cornetts' allegations relating to the adverse possession claim are true, would they be entitled to a grant of title by adverse possession? We hold that they would.

Here, the Cornetts did not merely allege adverse possession without supporting evidence. Though they did not provide the trial court with affidavits, they submitted a highlighted survey exhibit outlining the "known and visible lines and boundaries," *Dockery*, 357 N.C. at 218, 581 S.E.2d at 436, of their purported adverse possession. In their counterclaim, the Cornetts list the disputed encroachments upon this portion of the easement and the dates in which the encroachments were established or presented as evidence of their continuous possession for the prescriptive period. In the Cornetts' depositions, which were presented to the trial court, the Cornetts state that they believed the contested strip of land was theirs and had improved and maintained it since 1983. The Cornetts' counsel at the summary judgment hearing argued that the Cornetts treated the strip of land as their own and did not hide their maintenance of the structures. This evidence is sufficient to

support every element of adverse possession, that the Cornetts actually possessed the land in a manner that was open, continuous, exclusive, actual, and notorious ("OCEAN") for the prescribed period and under known and visible lines and boundaries.

Presumably, the Hinmans' predecessor in title, the Churches, had the opportunity to discover and remedy the Cornetts' encroachment for over twenty years but did not do so. Indeed, this case serves as a stark reminder that "the law aids the vigilant and not those who sleep over their rights." *Butler v. Bell*, 181 N.C. 85, 90, 106 S.E. 217, 220 (1921). This is true even for the Churches' successor in title, the Hinmans, who brought the trespass action after the Cornetts had possessed the land for over twenty years. Prior to buying the property from the Churches, the Hinmans had the opportunity to discover the encroachments by obtaining a survey.

Our statute and caselaw treats the twenty-year prescriptive period of adverse possession as a "statute of limitations" for actions to recover property, and we have never held that the prescriptive period must restart due to the sale of land adversely possessed. *Duke Energy Carolinas, LLC v. Gray*, 369 N.C. 1, 3, 789 S.E.2d 445, 446 (2016). So long as the adverse possessor continues to possess the land for the prescriptive period, the time required to adversely possess the land is not tolled or otherwise reset by the sale of the land adversely possessed. "At the expiration of the requisite period of possession, the possessor acquires fee simple title to the land; a new title is created and the title of the record owner is extinguished." *Fed. Paper Bd.*

*Co. v. Hartsfield*, 87 N.C. App. 667, 672, 362 S.E.2d 169, 172 (1987). If the Cornetts did adversely possess the land of the Churches prior to the sale of the Churches' interest to the Hinmans, then the Hinmans would not have received fee title in the disputed land. *See, e.g., Deans v. Mansfield*, 210 N.C. App. 222, 229, 707 S.E.2d 658, 664 (2011) (holding that the prescriptive period acts to divest a record owner's interest in the land even though the adverse possessor files a claim for title after a period of subsequent interruption).

These circumstances are juxtaposed to those found in *Dockery v. Hocutt*. There, our Supreme Court held that a party's evidence, even "when considered in the light most favorable to" the party, was not sufficient to bring the matter to a jury. 357 N.C. 210, 218, 581 S.E.2d 431, 437 (2003). The record was "devoid of evidence of known and visible boundaries" where the court was left to merely speculate as to where an ambiguous boundary was. *Id.* Further, the party did not evidence an encroachment "for the requisite twenty-year period." *Id.* at 219, 581 S.E.2d at 437. The Cornetts, by contrast, identified the contested strip of land where known and visible boundaries exist between it and the driveway. The Cornetts alleged that they possessed this property for over twenty years and listed the dates for the establishment of structures existing on the disputed strip of land.

These circumstances are also juxtaposed to those found in *Jones v. Miles*. This Court held that the hostility requirement of adverse possession may be extinguished with a subsequent grant of permission, unless "the possessor either rejects the grant

of permission or otherwise takes some affirmative step to put the true owner on notice that the possessor's use of the land remains hostile." 189 N.C. App. 289, 294, 658 S.E.2d 23, 27 (2008). In the present case, the record demonstrates the Churches allowed the Cornetts to use the driveway but contains no indication that the Cornetts received permission to possess the disputed strip of land as their own. Although the disputed strip of land is within an easement, the easement was for ingress and egress, not for the building of permanent structures.

The Cornetts presented evidence sufficient to overcome the Hinmans' motion to dismiss, and the trial court erred in granting summary judgment for the Hinmans when genuine issues of material fact remained.

## D. Trespass

Because we hold that the trial court erred in dismissing the Cornetts' adverse possession counterclaim, we hold that the trial court erred in granting the Hinmans' motion for summary judgment on their trespass claim. One party's successful adverse possession claim necessarily defeats another's trespass claim upon the same land.

Further, adverse possession is a defense to trespass. In *Williams v. South & South Rentals*, the plaintiff sought to require the removal of an apartment building which encroached approximately one square foot onto the plaintiff's property. This Court in *Williams* said, "While the action sounds in trespass because there is no dispute over title or location of the boundary line, plaintiff seeks a permanent remedy

and is subject to the twenty-year statute of limitations for adverse possession." 82 N.C. App. 378, 382, 346 S.E.2d 665, 667 (1986). In the case of *Bishop v. Reinhold,* this Court held the plaintiff's action to remove structures built by the defendants which partially encroached onto the Bishops' property "would not be barred until defendants had been in continuous use thereof for a period of twenty years." 66 N.C. App. 379, 384, 311 S.E.2d 298, 301 (1984). Thus, if the Cornetts are successful in showing adverse possession of the disputed strip of land for twenty years, it would defeat the Hinmans' claim of trespass and request to remove the encroachments.

**E. Nuisance Fence**

The Cornetts allege that the Hinmans erected a nuisance fence between the driveway and the Cornetts' property. It is not clear, presuming the Cornetts' succeed in their adverse possession counterclaim, whether the fence would be on the Cornetts' or the Hinmans' property.

If the fence is on the Hinmans' property, its mere presence on the easement is not an actionable issue so long as its presence does not interfere with the Cornetts' permissive use of the easement. "The owners of the servient estate may make any use of their property and road not inconsistent with the reasonable use and enjoyment of the easement granted." *Shingleton v. State*, 260 N.C. 451, 457, 133 S.E.2d 183, 187 (1963); *cf. Ingraham v. Hough*, 46 N.C. (1 Jones) 39, 44 (1853) (holding that an impassable gate across a right of way is an "interruption[] to the user of the easement"). The Cornetts allege that the fence frustrates their use of the

easement in that it does not allow them access to Tract 1 of their property or, rather, makes it more difficult to access Tract 1. Because we hold that the easement does not grant access to Tract 1 and because the Cornetts did not otherwise argue that the fence impedes their access to Tract 2, the Cornetts and their land are uninjured. Therefore, this argument is overruled. Yet, because the issue of whether the fence is on the Cornetts' property or the Hinmans' property is unresolved, this issue must be remanded to the trial court.

## IV.    Conclusion

The trial court did not err when it prohibited the Cornetts from using the driveway to access Tract 1 of their property, as the Cornetts do not have an easement to access Tract 1. However, the trial court did err in dismissing the Cornetts' counterclaim for adverse possession of the strip of land between the driveway and the Cornetts' deeded property. Because of this error, the trial court further erred in granting the Hinmans' motion for summary judgment on the issue of trespass. Consequently, we reverse the dismissal order and the summary judgment order of the trial court and remand for further proceedings not inconsistent with this opinion.


AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judge TYSON concurs in the result in part and dissents in part by separate opinion.

Judge MURPHY concurs in the result only without separate opinion.

TYSON, Judge, concurring in the result in part and dissenting in part.

The plurality's opinion properly affirms the trial court's prohibition of the Cornetts from using the driveway easement to access Tract 1 of their property. The plurality's opinion further holds the trial court erred in dismissing the Cornetts' counterclaim for adverse possession of the strip of land between the driveway easement and their deeded property. I vote to affirm the trial court's dismissal of the Cornetts' counterclaim and of Hinmans' motion for summary judgment on their trespass claims. I respectfully dissent.

## I. Standard of Review

North Carolina Rule of Civil Procedure 56(c) allows a moving party to obtain summary judgment upon demonstrating that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show that they are "entitled to a judgment as a matter of law" and "that there is no genuine issue as to any material fact." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021).

"The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citation omitted). "This burden may be met by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Id.* (citation and internal quotation marks omitted).

A genuine issue is one supported by evidence that would "persuade a reasonable mind to accept a conclusion." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted). "An issue is material if the facts alleged would . . . affect the result of the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

When reviewing the evidence at summary judgment, "[a]ll inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988) (citation omitted). On appeal, "[t]he standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted).

## II. Adverse Possession for Twenty Years

"To acquire title to land by adverse possession, the claimant must show actual, open, hostile [notorious], exclusive, and continuous ["OCEAN"] possession of the land claimed for the prescriptive period [.]" *Merrick v. Peterson*, 143 N.C. App. 656, 663, 548 S.E.2d 171, 176, *disc. review denied*, 354 N.C. 364, 556 S.E.2d 572 (2001). The law does not favor adverse possession and the presumption before the court is that a claimant's use is permissive. *See Potts v. Burnette*, 301 N.C. 663, 667, 273 S.E.2d 285, 288 (1981) (citation omitted). Adverse possession of privately-owned property without color of title must be continuously maintained for twenty years before a claimant may successfully assert a claim to acquire title to the land. N.C. Gen. Stat.

§ 1-40 (2021).

A hostile use is "simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right." *Dulin v. Faires*, 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966). "[I]n order for plaintiffs to succeed in their claim, they must have shown sufficient evidence of the hostile character of their use to create an issue of fact for the jury." *Potts*, 301 N.C. at 667, 273 S.E.2d at 288. *Webster's Real Estate Law* describes hostile possession as by claimant's possession, which excludes "any recognition of the true owner's rights" to the property. James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 14.06 (Patrick K. Hetrick & James B. McLaughlin, J. eds., 6th ed. 2022) ("Hostile possession is possession that excludes any recognition of the true owner's rights in the property." citing *Marlowe v. Clark*, 112 N.C. App. 181, 435 S.E.2d 354 (1993); *State v. Brooks*, 275 N.C. 175, 166 S.E.2d 70 (1969)).

"The hostility element may be satisfied by a showing that a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto." *Jones v. Miles*, 189 N.C. App. 289, 292, 658 S.E.2d 23, 26 (2008) (citation and quotation marks omitted). "However, the hostility requirement is not met if the possessor's use of the disputed land is permissive." *Id.* (citation omitted).

The common law of North Carolina presumes the user's possession, claiming title by adverse possession, is permissive:

3

Plaintiffs have vigorously urged us *to reject* our present position that a *user is presumed to be permissive* and adopt the rule, obtaining in the majority of jurisdictions, that the user is presumed to be adverse. *This we decline to do.* An easement by prescription, like adverse possession, is *not favored in the law* and we deem it the better-reasoned view to place the burden of proving every essential element, including hostility, on the party who is claiming against the interests of the true owner. Additionally we note that the modern tendency is to restrict the right of one to acquire a prescriptive right-of-way whereby another, through a mere neighborly act, may be deprived of his property by its becoming vested in one whom he favored. Thus, in order for plaintiffs to succeed in their claim, they must have shown *sufficient evidence of the hostile character* of their use to create an issue of fact for the jury.

*Potts*, 301 N.C. at 666-67, 273 S.E.2d at 288 (internal citations, footnote, alterations, and quotation marks omitted) (emphasis supplied).

Nearly seventy-five years ago, our Supreme Court held:

A statute prescribing the length of time during which an adverse possession of land must be maintained in order for it to ripen into title will not begin to run until these two things concur: (1) The claimant has *actual possession* of the land under color of title, or claim of right; *and* (2) the possession of the claimant gives rise to a cause of action in favor of the true owner. *In other words, an adverse possession will never run against the owner of an interest in land unless he has legal power to stop it*.

*Eason v. Spence*, 232 N.C. 579, 587, 61 S.E.2d 717, 723 (1950) (internal citation omitted) (emphasis supplied).

Here, the undisputed evidence tends to show and the trial court's judgment concludes the Cornetts paid the Churches, the Hinman's predecessor-in-title, directly

for the driveway easement to be paved in 1996 and shows the Cornetts also paid for the installation of drainage pipes within the easement to the Churches. The structures including: the brick driveway; the front carport; the chain link fence about the front carport; the gravel, later paved, road; the chain link fence; and, the garden were in place before the Cornetts first rented the parcel.

The burden on proving each element rests on the party claiming title by adverse possession. This party also has the burden of rebutting a presumption that its use is permissive and is not adverse. The Cornetts cannot overcome the presumption of permissive use. *See Potts*, 301 N.C. at 667, 273 S.E.2d at 288 ("Thus, in order for plaintiffs to succeed in their claim, they must have shown sufficient evidence of the hostile character of their use to create an issue of fact for the jury.").

The Cornetts installed the rear shelter during the Gulf War in 1991, the wood rail fence was constructed in 1992, the front car port in 1996, the chain link fence in 1996, and the garden and crepe myrtle trees were planted and maintained since 1999. This Court found possession not to be hostile, where the putative adverse possessor's actions acknowledge the continuing ownership rights of the landowner. *New Covenant Worship Center v. Wright*, 166 N.C. App. 96, 104, 601 S.E.2d 245, 251-52 (2004).

During his deposition, Mr. Cornett was asked "[S]o Bennie Church was fine with you using the driveway. Correct?" He replied: "Oh, yes." Mr. Cornett further stated there was no problem with the placement of drainage pipes in the easement

5

from the Churches nor when they planted crepe myrtles in the easement. The Churches, who owned the servient estate, helped to pay for the paving of the driveway that they shared use of with the dominant estate. The Hinmans insisted for the Cornetts to move a disabled vehicle from the easement after a few weeks, and it is now on the parcel the Cornetts' son lives on.

The running of the prescribed twenty-year statutory period to assert and adversely possess real property was tolled by the Churches' granting permissive use of the easement and parcel at issue to the Cornetts. *Id.*; *Eason*, 232 N.C. at 587, 61 S.E.2d at 723. The record shows the Churches, the Hinmans' predecessors-in-title, had expressly granted permission to the Cornetts to use the now-disputed tract of land. This permissive use tolled the running of the twenty-year statute of limitations pursuant to N.C. Gen. Stat. § 1-40. The Hinmans acquired the servient parcel in 2019. The Hinmans timely filed this action to quiet title and for trespass in 2021.

The plurality's opinion states: "A party may succeed in an adverse possession claim 'though the claim of title is founded on a mistake.' " citing *Walls v. Grohman*, 315 N.C. 239, 249, 337 S.E.2d 556, 562 (1985). This is an accurate quote from *Walls*, and the Cornetts purportedly and may have mistakenly believed they owned the land contained within the easement. Even if true, their belief does not address the tolling of the statutory period by their admittedly permissive use and the Churches' ownership of the servient parcel prior to the Hinmans' acquisition. During Wade Cornett's deposition, he testified he believed he owned the land under which the

6

easement ran.

In *Walls*, the Supreme Court of North Carolina overruled its prior holdings in *Price v. Whisnant*, 236 N.C. 381, 72 S.E.2d 851 (1952) and *Gibson v. Dudley*, 233 N.C. 255, 63 S.E.2d 630 (1951), which required an adverse possessor to have the mind of a thief in order for his possession of the property to be adverse:

> [W]e now join the overwhelming majority of states, return to the law as it existed prior to *Price* and *Gibson*, and hold that when a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto, his possession and claim of title is adverse.

*Walls*, 315 N.C. at 249, 337 S.E.2d at 562.

However, the plurality opinion's reliance on this application of *Walls* under these facts is misplaced and erroneous. While the Cornetts' purported mistaken belief may not necessarily defeat their claim, the plurality's opinion erroneously labels it as a dispositive question, without making an analysis of the Churches' prior ownership and their express permissive allowance of the Cornetts use. The Supreme Court's analysis in *Eason* and this Court's analysis in *Jones* is dispositive. *See Eason*, 232 N.C. at 587, 61 S.E.2d at 723 ("[C]laimant has actual possession of the land. . . an adverse possession will never run against the owner of an interest of land unless he has the legal power to stop it."); *Jones*, 189 N.C. App. at 292, 658 S.E.2d at 26 (true owner must be on "notice that the [adverse] use is being made under claim of right.").

## III.    Conclusion

The plurality's opinion properly affirms the trial court's prohibition of the Cornetts from using the driveway to access the non-dominant Tract 1 of their property.

The Cornetts did not prove open, continuous, exclusive, actual, and notorious ("OCEAN") possession of the Hinman's property for the requisite statutory period. Viewed in the light most favorable to the Cornetts, no genuine issues of material fact exist of whether they failed to hold possession of the disputed tract for the requisite statutory twenty-year period. *Resort Realty of the Outer Banks, Inc. v. Brandt*, 163 N.C. App. 114, 116, 593 S.E.2d 404, 407-08, *disc. review denied*, 358 N.C. 236, 595 S.E.2d 154 (2004). The trial court's order granting summary judgment to the Hinmans should be affirmed. I respectfully dissent.